# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **MCADAM PROPERTIES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 2:17-CV-2088-VEH** |
| ) | |
| **DUNKIN' DONUTS** ) | |
| **FRANCHISING, LLC; DUNKIN'** ) | |
| **BRANDS GROUP, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

---

## MEMORANDUM OPINION

The case comes before the Court on the Motion To Remand filed by the Plaintiff (the "Motion"). (Doc. 16). Oral argument was held on the motion on February 15, 2018. For the reasons stated herein and at oral argument, the Motion will be **GRANTED** and this case will be **REMANDED** to the Circuit Court of Jefferson County, Alabama.

## I. INTRODUCTION AND PROCEDURAL HISTORY

### A. Initiation of the Lawsuit in State Court

This civil action was filed on May 25, 2016, in the Circuit Court of Jefferson County, Alabama by the Plaintiff, McAdam Properties, LLC, against the following Defendants: Barista Food Service, LLC ("Barista"); Dunkin' Donuts; and Dunkin'

Brands Group, Inc. ("Dunkin Brands") (Doc. 1-1)(Doc. 1-1). The case arises out of a lease agreement between the Plaintiff and Barista, a potential franchisee of a "Dunkin' Donuts" franchise, which prompted the Plaintiff to construct part of its shopping center to the particular specifications required of a Dunkin' Donuts store. In October of 2014, after construction had begun, but before construction was completed, "Barista . . . informed McAdam Properties that Barista . . . would not be taking possession of the premises and that Dunkin' Donuts would take assignment of the lease agreement." (Doc. 1-1 at 3, ¶8). The Plaintiff claims it was injured when, in May of 2015, after it completed construction, "Dunkin' Donuts informed McAdam Properties that it would not take assignment of the lease unless it could obtain a franchisee to become a substitute for Barista." (Doc. 1-1 at 4, ¶11). The Complaint sets out a claim for fraud (Count One) against all Defendants, and a claim for suppression (Count Two) against only Dunkin' Donuts and Dunkin's Brands.

### B.    The Removal

The Defendants allege that on November 21, 2017, complete diversity of citizenship pursuant to 28 U.S.C. § 1332 was created when the state court dismissed Barista on the Plaintiff's motion. (Doc. 1-9 at 284). The remaining Defendants removed the case to this Court on December 13, 2017. (Doc. 1).

## C.     Substitution of Defendants

On January 5, 2018, based on the representation by the Defendant that "Dunkin' Donuts Franchising LLC is the franchisor of the Dunkin' Donuts system. "Dunkin' Donuts" is a trade name, not a business entity" (doc. 1 at 1), this Court Ordered that "Dunkin' Donuts Franchising LLC" be substituted as a Defendant in place of the Defendant named "Dunkin' Donuts." (Doc. 9 at 2). The current Defendants are now Dunkin' Donuts Franchising, LLC and Dunkin' Brands Group, Inc.

## D.     This Court's Order Regarding Jurisdiction

In the Order substituting parties, this Court also wrote:

> With that change, the Notice of Removal, as currently written, does not satisfactorily establish the Court's jurisdiction over the action. Accordingly, no later than January 19, 2018, the removing parties are **ORDERED** to file with this court a Notice establishing this Court's jurisdiction according to the standard enunciated by the Eleventh Circuit in *Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC*, 374 F.3d 1020 (11th Cir. 2004). Specifically, that case held that, in order to establish diversity, if a limited liability company is a party, the names and states of domicile of each member of the limited liability company must be listed.

(Doc. 9 at 2-3). Thereafter, on January 11, 2018, the Defendants filed document 11 which states, in pertinent part:

> 1. Plaintiff McAdam Properties, LLC is an Alabama limited liability company with its principal place of business in Alabama. The sole member of Plaintiff McAdam Properties, LLC is Kerry McAdam, a resident and citizen of Alabama.

3

2. Defendant Dunkin' Brands Group, Inc. is a Delaware corporation with its principal place of business in Canton, Massachusetts.

3. Defendant Dunkin' Donuts Franchising LLC is a Delaware limited liability company with its principal place of business in Canton, Massachusetts. The sole member of Defendant Dunkin' Donuts Franchising LLC is DB Franchising Holding Company LLC, which is a Delaware limited liability company with its principal place of business in Canton, Massachusetts. In turn the sole member of DB Franchising Holding Company LLC is DB Master Finance LLC. DB Master Finance LLC is a Delaware limited liability company with its principal place of business in Canton, Massachusetts. The sole member of DB Master Finance LLC is Baskin-Robbins International LLC, a Delaware limited liability company with its principal place of business in Canton, Massachusetts. The sole member of Baskin-Robbins International LLC is Baskin-Robbins Flavors LLC, a Delaware limited liability company with its principal place of business in Canton, Massachusetts. The sole member of Baskin-Robbins Flavors LLC is Baskin-Robbins USA LLC, a California limited liability company with its principal place of business in Canton, Massachusetts. The sole member of Baskin-Robbins USA LLC is Baskin-Robbins LLC, a Delaware limited liability company with its principal place of business in Canton, Massachusetts. The sole member of Baskin-Robbins LLC is Mister Donut of America LLC, a Delaware limited liability company with its principal place of business in Canton, Massachusetts. The sole member of Mister Donut of America LLC is Dunkin' Donuts USA LLC, a Delaware limited liability company with its principal place of business in Canton, Massachusetts. The sole member of Dunkin' Donuts USA LLC is Dunkin' Donuts LLC, a Delaware limited liability company with its principal place of business in Canton, Massachusetts. The sole member of Dunkin' Donuts LLC is Dunkin' Brands, Inc., a Delaware corporation with its principal place of business in Canton, Massachusetts. Dunkin' Brands, Inc. is a wholly owned subsidiary of Dunkin' Brands Holdings, Inc., a Delaware corporation with its principal place of business in Canton, Massachusetts.

(Doc. 11 at 1-2 at ¶¶1-3).

Put more simply, the Plaintiff, as an LLC, is a citizen of Alabama, the only state in which its only member is a citizen. Defendant Dunkin' Brands Group, Inc. is a Delaware corporation with its principal place of business in Massachusetts. Therefore, it is a citizen of the states of Delaware and Massachusetts. *See*, *Life of the S. Ins. Co. v. Carzell*, 851 F.3d 1341, 1344 (11th Cir. 2017) (citing 28 U.S.C. § 1332(c)(1)) (corporation is a citizen of the state of its incorporation and its principal place of business).

Dunkin' Donuts Franchising LLC is the last in a long chain of LLCs each of which is the sole member of the next. However, the sole member of the <u>first</u> LLC in the chain, Dunkin' Donuts LLC, is Dunkin' Brands Holdings, Inc., which is a citizen of both Delaware and Massachusetts. Because this citizenship is then imputed to each LLC up the chain, Dunkin' Donuts Franchising LLC is also a citizen of both Delaware and Massachusetts.

## II.    STANDARD FOR REMAND

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). For removal to be proper, the court must have subject-matter jurisdiction in the case. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the Defendant."

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). In addition, the removal statute must be strictly construed against removal, and any doubts should be resolved in favor of remand. *See, City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) ("[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court.") (citation omitted).

"In removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) (citation omitted); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir.2001).

> That burden goes not only to the issue of federal jurisdiction, but also to questions of compliance with statutes governing the exercise of the right of removal. *Albonetti v. GAF Corporation-Chemical Group,* 520 F.Supp. 825, 827 (S.D. Texas 1981); *Jennings Clothiers of Ft. Dodge, Inc. v. U.S. Fidelity & Guaranty Co.,* 496 F.Supp. 1254, 1255 (D.Iowa 1980); *Fort v. Ralston Purina Company,* 452 F.Supp. 241, 242 (E.D.Tenn.1978).

*Parker v. Brown*, 570 F.Supp. 640, 642 (D.C. Ohio, 1983).

> While it is undoubtedly best to include all relevant evidence in the petition for removal and motion to remand, there is no good reason to keep a district court from eliciting or reviewing evidence outside the removal petition. We align ourselves with our sister circuits in adopting a more flexible approach, allowing the district court when necessary to consider post-removal evidence in assessing removal jurisdiction. We emphasize, as did the court in *Allen,* that "under any manner of proof, the

jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time." *Allen,* 63 F.3d at 1335.

*Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. 2000).

## III. ANALYSIS

As noted above, the Defendants removed this case alleging that complete diversity of citizenship exists pursuant to 28 U.S.C. § 1332.[1] However, "[a] case may not be removed . . . on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, <u>unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action</u>." 28 U.S.C.A. § 1446(c). The Complaint in this case was filed in state court on May 25, 2016, and the case was not removed until December 13, 2017–1 year, 6 months, and 19 days (counting the date of removal) after the case was filed.

The Defendants argue that there is bad faith here because the Plaintiff knew that there was no basis for a fraud claim against Barista at the time it filed this case.[2] In support of this argument, <u>in their notice of removal</u> they cited the following testimony from the March 24, 2017, deposition of Kerry McAdams, the sole member of the

_____

[1] The parties agree that the amount in controversy requirement of 28 U.S.C. §1332 is satisfied. After reviewing the allegations in this case, the Court **HOLDS** that it is.

[2] Recall that the <u>only</u> claim against Barista was Count One, alleging fraud.

Plaintiff:

Q. But the bottom line is, the shell of the building was not constructed until August or September –

A. Correct.

Q. -- of 2015? And that was after those discussions in May of 2015 with Dunkin', right?

A. Correct.

Q. So there were not any things that Ramon Arias [the sole member of Barista] said that caused you to go do anything from October -- anytime after October of 2014, right?

A. Correct.

Q. In fact, you didn't have any substantive discussions with Ramon about the project during that time after -- certainly after October of 2014, right?

A. Everything was dictated by Dunkin' Brands.

Q. And no discussions with Ramon Arias or anyone else at Barista?

A. I think I may have copied him maybe on an e-mail, too, but that would have been it.

Q. But nothing you relied on?

A. No.

Q. And by "no, sir," you mean that's correct?

A. That's correct.

(Doc. 1 at 6-7) (quoting doc. 1-9 (Deposition of Kerry McAdams) at 203(286-287)).

According to the Defendants, this testimony demonstrates that the Plaintiff knew, at the time the lawsuit was filed, that it had not <u>relied</u> upon any <u>representation</u> from <u>Barista</u>.[3] <u>At oral argument</u>, the Defendants argued that Alabama's statute of frauds prevents the Plaintiff from reasonably relying on any representations from Barista.

A. **The One Year Time Limit for Removing Diversity Cases (28 U.S.C. § 1446(c))**

Section 1446(c) was added to the removal statute pursuant to the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 (2011) ("An Act to amend title 28, United States Code, to clarify the jurisdiction of the Federal courts, and for other purposes."). *See*, H.R. REP. 112-10, 15, 2011 U.S.C.C.A.N. 576, 580 ("Section paragraph 1446(c)(1) grants district court judges discretion to allow removal after the 1-year limit if they find that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."). However, there

---

[3] In Alabama,

[t]he essential elements of a fraud claim are: (1) <u>misrepresentation of a material fact</u>; (2) made willfully to deceive, or recklessly without knowledge; (3) <u>which was justifiably relied upon by the plaintiff under the circumstances</u>; and (4) which caused damage as a proximate consequence.

*McCullough v. Allstate Prop. & Cas. Ins. Co.*, No. 2160497, 2018 WL 387844, at *6 (Ala. Civ. App. Jan. 12, 2018) (emphasis added) (internal quotations and citations omitted); *see also*, *Patten v. Alfa Mut. Ins. Co.*, 670 So. 2d 854, 856 (Ala. 1995) (same). To the extent that Count One can be interpreted as a promissory fraud claim, "two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive." *Southland Bank v. A & A Drywall Supply Co.*, 21 So. 3d 1196, 1210 (Ala. 2008).

is very little authority on what "bad faith" means in the context of the statute.

## B.     The History of the Equitable Exception to the One Year Limit

Acknowledging the "dearth" of case law on this issue, in its opposition to the Motion To Remand, the Defendants argue that "a review of the history of the evolution of [the] bad faith exception shows that it is fully applicable here." (Doc. 21 at 7). The Court agrees that such a review is helpful, but does not agree that it is helpful to the Defendants' argument.

Section 1446 was first amended "to establish a one-year limit on removal based on diversity jurisdiction as a means of reducing the opportunity for removal after substantial progress has been made in state court." H.R. REP. 100-889, 72, 1988 U.S.C.C.A.N. 5982, 6032. In *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 427 (5th Cir. 2003), the Fifth Circuit became the first circuit court to recognize an equitable exception to the one year limitation. That case is widely regarded as the common law origination of the current statutory exception. *See*, Nathan A. Lennon, Note, *Two Steps Forward, One Step Back: Congress Has Codified the Tedford Exception, but Will Inconsistent Applications of "Bad Faith" Swallow the Rule?*, 40 N. Ky. L. Rev. 233, 241–43 (2013); Emily L. Buchanan, *A Comity of Errors: Treading on State Court Jurisdiction in the Name of Federalism*, 55 S. Tex. L. Rev. 1, 18 (2013) ("In 2011, Congress enacted the Federal Courts Jurisdiction and Venue Clarification Act. Among

other amendments, the Act codified the equitable exception to the one-year bar."). Accordingly, a review of that case is appropriate.

In *Tedford*, hours after learning that the defendant intended to remove the case, the plaintiff amended her complaint to add a non-diverse defendant. Then, prior to the expiration of the one year period, the plaintiff signed and post-dated a "Notice of Nonsuit" of that defendant, but did not file it with the court or notify the other defendant until the one-year period had expired. The Fifth Circuit held that "[w]here a plaintiff has attempted to manipulate[4] the statutory rules for determining federal removal jurisdiction, thereby preventing the defendant from exercising its rights, equity may require that the one-year limit in § 1446(b) be extended." *Tedford*, 327 F.3d at 428-29. Under the circumstances, the Fifth Circuit determined that "[e]quity demands [the plaintiff] be estopped from seeking to remand the case on the basis of the one-year limit." *Id*. at 428.[5]

_____

[4] Notably, the Fifth Circuit used the word "manipulate," not the phrase "bad faith."

[5] The Plaintiff argues that *Tedford* is in direct contradiction to Eleventh Circuit precedent, quoting the following footnote from that case:

> "*But see Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 n. 12 (11th Cir.1994) ("[C]ongress knew when it passed the one year bar on removal that some plaintiffs would attempt to defeat diversity by fraudulently (and temporarily) joining a non-diverse party. In that case, as long as there is some possibility that a non-diverse joined party could be liable in the action, there is no federal jurisdiction.... [A] plaintiff could defeat jurisdiction by joining a non-diverse party and dismissing him after the deadline. Congress has recognized and accepted that, in some circumstances, plaintiff can and will intentionally avoid federal

## C.    The Defendants Have Not Shown Bad Faith

Recall that "[i]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) (citation omitted). In the instant case, that means that the Defendants must show that the Plaintiff "has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C.A. § 1446(c). The Defendants have not carried their burden.

The Defendants cite only *Tedford* in their Notice of Removal. However, in their opposition to the Motion To Remand, the Defendants cite one other case, without discussion, in support of their position--*Noyes v. Universal Underwriters Ins. Co.*, 3 F. Supp. 3d 1356 (M.D. Fla. 2014) (Moody, J.), *on reconsideration in part*, No. 8:13-CV-3077-T-30TGW, 2014 WL 2111695 (M.D. Fla. Apr. 30, 2014).[6] *Noyes*

---

jurisdiction.") (dictum). After examining the legislative history, we must respectfully disagree with the *Burns* court. *See infra* note 9."

(Doc. 16 at 3) (quoting *Tedford*, 327 F.3d at 426, n. 3.). The Plaintiff then notes that "[t]his Court, of course, is bound by the decisions of the 11th Circuit." (Doc. 16 at 3). First, the *Burns* decision is distinguishable on its facts as *Burns* dealt not with fraudulently joined defendants, but instead with a complaint which, on its face, alleged damages below the jurisdictional amount. Accordingly, the quoted section of *Burns* is dicta. Second, the law of the land is now codified in 28 U.S.C. § 1446(c). To the extent that *Burns* says anything to the contrary, it has been statutorily superceded.

[6] The Defendants write:

Counsel for Dunkin', despite extensive research on the issue, has only been able to find one case, *Noyes, supra*, applying the bad faith exception to a situation where a

involved a claim by James Noyes against Universal Underwriter's Insurance Company

("Universal") for the alleged bad faith failure to settle an underlying tort case within

policy limits. In the underlying tort case, Tampa Auto Service ("Tampa Auto"), where

Noyes worked as a service manager, repaired a flat tire on a vehicle owned by Roy

Chattelle. Three months after the repair, Chattelle's wife was severely injured when the

tire lost its tread, causing an accident. Chattelle sued Tampa Auto, but did not sue

Noyes. David LoNigro, the insurer's in-house counsel, was assigned to the case. Seven

months after getting the case, LoNigro sent Chattelle a policy limits settlement offer of

$1.3 million, which was rejected. Afterwards, Universal transferred the case to outside

counsel. On November 4, 2009, the state court entered an order substituting another

attorney for LoNigro. On January 24, 2011, Chattelle amended his complaint to add

Noyes as a defendant. After trial, the Chattelles won a judgment of $7 million against

Tampa Auto and $6 million against Noyes.

On September 27, 2012, Noyes sued Universal and LoNigro in Florida state

---

plaintiff pursues a facially invalid claim from the onset, as is the case here.

(Doc. 21 at 9, n. 1). The Defendants also quoted, without discussion, the following language from *Lawson v. Parker Hannifin Corp.*, No. 4:13-CV-923-O, 2014 WL 1158880, at *6 (N.D. Tex. Mar. 20, 2014) (O'Connor, J.): "Sufficient evidence of forum manipulation exists to warrant application of the bad faith exception to the one-year removal period." (Doc. 1 at 9; doc. 21 at 17). Such evidence is not present here.

court for bad faith failure to settle. The opinion then sets out the following procedural history:

> Universal initially removed the case to federal court on the basis that Noyes fraudulently joined LoNigro to destroy diversity since LoNigro is a citizen of Florida. Universal alleged that Noyes could not state a legal malpractice claim against LoNigro because Noyes was not a party in the underlying claim until after LoNigro was removed as counsel from the case. Noyes filed a motion to remand on the basis that the notice of removal was untimely. The district court remanded the case based on the removal being late by one day, but did not address the issue of fraudulent joinder.

> In the state court, LoNigro filed a motion to dismiss on the basis that Noyes failed to state a cause of action against him for legal malpractice. Noyes argued that LoNigro represented Noyes regarding the Chattelles' "claims," and not the underlying lawsuit specifically. The theory is that the "claims" were not limited to the causes of action brought in the underlying case but included the potential claims against the employees of Tampa Auto, including Noyes. The state court entered an order dismissing the count against LoNigro without prejudice, and allowed Noyes to file an amended complaint. The amended complaint alleged that an attorney-client privilege existed between Noyes and LoNigro and in the alternative that LoNigro was a third party beneficiary to the attorney client relationship between Tampa Auto and LoNigro.

> LoNigro then filed a second motion to dismiss along with a motion for sanctions pursuant to Fla. Stat. § 57.105. The state court granted LoNigro's motion to dismiss the amended complaint, without prejudice and with leave to amend the complaint within twenty days. Noyes and LoNigro entered into a settlement agreement whereby Noyes would stipulate to LoNigro's dismissal with prejudice in exchange for LoNigro dropping his claim for attorney's fees. The state court entered the stipulated order dismissing LoNigro with prejudice on November 6, 2013. Universal then filed the Notice of Removal on December 6, 2013, which is the subject of this Motion to Remand.

*Noyes*, 3 F. Supp. 3d at 1359. Universal argued that the act of fraudulently joining LoNigro in order to destroy diversity amounted to bad faith. "As proof of the fraudulent joinder, Universal point[ed] to the two state court dismissals of the claims against LoNigro which support that Noyes could not have possibly stated a cause of action against LoNigro for legal malpractice." *Id.* at 1360.

The district court first determined, after significant analysis, that Universal had met its burden of establishing that LoNigro was fraudulently joined for the purpose of destroying diversity. *Id.* at 1362. Thereafter, the court concluded, with little to no analysis, "that Noyes' fraudulent joinder was meant to manipulate the state court's jurisdiction and constitutes bad faith." *Id.* at 1363.

With their citation of *Noyes*, the Defendants seem to be arguing that fraudulent joinder, alone, without bad <u>conduct</u> by the Plaintiff, can be "bad faith" under the statute. That is the position they took at oral argument.

## 1. *The Defendants Have Not Shown Fraudulent Joinder*

First, assuming that fraudulent joinder <u>alone</u> is sufficient to qualify as "bad faith" under the statute[7], the Defendants make no real attempt, other than in an underdeveloped footnote, to show that there was fraudulent joinder. (*See* doc. 21 at 9, n. 1). Furthermore, the facts seem to suggest both that there <u>was</u> a valid claim

---

[7] The Court holds *infra* that it is not.

against Barista, and that it was vigorously prosecuted–the Plaintiff survived summary

judgment on its claims against Barista after the Defendants made the same arguments

they are making now. (*See* doc. 16 at 5). That alone makes this case factually

distinguishable from *Noyes*.[8]  The Court also notes that the case against Barista was not

settled as a "walk away" as stated by the Defendants. (*See* doc. 1 at 8). As part of the

settlement, Barista agreed to allow the Plaintiff to keep the $69,000 in first month's

rent–the very thing Barista had sued for. (*See* doc. 16 at 4). The Defendants have not

satisfied their burden in this regard.[9]

> ### 2.    *The Defendants Have Not Shown that Fraudulent Joinder Alone Is Equivalent to Statutory "Bad Faith"*

The Defendants cite no support for the proposition that "bad faith" under the

statute is present when a defendant is fraudulently joined but without some other

misconduct by the plaintiff. Indeed, there is significant authority, based on the *Tedford*

---

[8] The Court is aware that Defendants moved to reconsider that order, which was drafted by the Plaintiff, arguing that it "is riddled with misstatements of the law and mischaracterizations of the record evidence." (Doc. 21 at 15; *see also* doc. 21 at 15-17). However, as the court noted during oral argument, the instant motion is not the proper forum to re-litigate that order.

[9] At oral argument, the Court requested that the Defendants produce a case citation, which they have done in document 28.  The case cited by the Defendants is *Wilma Corp. v. Fleming Foods of Alabama, Inc.*, 613 So. 2d 359, 366 (Ala. 1993), *overruled by Bruce v. Cole*, 854 So. 2d 47 (Ala. 2003), which they contend stands for the proposition that the statute of frauds prevented the Plaintiff from reasonably relying on the representations of Barista that the lease had been assigned to Defendants.  However, the writing which they contend prevents the Plaintiff's reliance is the assignment contract between these Defendants and Barista.  The Defendants have cited no authority for the proposition that any deficiency in the assignment contract, to which the Plaintiff was not a party, bars the Plaintiff's fraud claim.

exception, to the contrary. For example, in *Lafazia v. Ecolab, Inc.*, No. C.A.NO. 06-491ML, 2006 WL 3613771, at *1 (D.R.I. Dec. 11, 2006) (Almond, M.J.), the plaintiff "was allegedly injured in a workplace accident by electrocution while operating a garbage disposal and dishwasher." *Lafazia,* 2006 WL 3613771, at *1. As noted by the court:

> Plaintiff filed suit in Superior Court on February 16, 2005 against his employer, Cedar Crest; Cedar Crest's workers' compensation insurer, Beacon Mutual Insurance Co. ("Beacon"); and Johnson Diversity, Inc., apparently a vendor of kitchen cleaning equipment and/or systems to Cedar Crest. Since Cedar Crest and Beacon are Rhode Island corporations, there was not complete diversity, and the case was not initially removable.

*Id.* The plaintiff settled with the employer and the insurer, and then amended his complaint to add another diverse defendant, Ecolab, Inc., who was also a vendor of kitchen cleaning equipment and/or systems to Cedar Crest. The court noted:

> Plaintiff, however, did not remove Cedar Crest from the caption of the First Amended Complaint. In addition, both Plaintiff's Complaint and First Amended Complaint lump all of the Defendants together for pleading purposes, and the First Amended Complaint contains a premises liability claim in Count IV which one would reasonably assume is directed at Cedar Crest since the injury allegedly occurred in its facility.

*Id*. The state court granted summary judgment against the Plaintiff on his claims against Johnson Diversity, Inc., which would have made the only remaining claims those against Ecolab, Inc. However, the court noted that because of the inclusion of Cedar

Crest in the caption of the amended complaint, and the presence of the premises liability claim, "it was far from clear at that point if Cedar Crest was or was not still a party to this case and if there were proper grounds for removal." *Id.* The court held that Cedar Crest and Beacon were fraudulently joined parties and wrote:

> The bottom line is that this case would have been removable from its commencement but for the presence of two fraudulently joined parties, *i.e.*, Cedar Crest and Beacon, who are immune from suit in Superior Court due to workers' compensation exclusivity. By continuing to identify Cedar Crest, after its dismissal in Superior Court, as an active Defendant in his First Amended Complaint, Plaintiff falsely led Ecolab to believe that this was not a diversity case because Cedar Crest is a Rhode Island corporation operating a nursing home in Rhode Island. It is unclear whether this is a case of procedural gamesmanship to prevent removal or if Plaintiff has received an unintended benefit from sloppy pleading. Either way, this Court concludes that it would be inequitable to deprive Ecolab of its right to remove this case on diversity grounds on these unique facts.

*Id.* at *3 (footnote omitted).

Similarly, in *Arrighi v. Celebration Station Properties, Inc.*, No. CIV.A. 10-105-BAJ, 2010 WL 4386066, at *6–7 (M.D. La. Sept. 14, 2010) (Riedlinger, J.), report and recommendation adopted, No. CIV.A. 10-105-BAJ-SC, 2010 WL 4366060 (M.D. La. Oct. 27, 2010), the court applied the *Tedford* exception, writing:

> Plaintiff had information indicating that there was no basis for a claim against Corporate Green, but did not conduct discovery or respond to Corporate Green's discovery, and did not voluntarily dismiss the claim. Instead, the plaintiff waited for Corporate Green to file a Motion for Summary Judgment which he did not oppose.

Considering this conduct as a whole, the only reasonable conclusion is that the plaintiff knew he lacked a factual basis for the claim against Corporate Green, but maintained this defendant in the case to get beyond the one year time limit for removal. When it became apparent that the plaintiff could no longer keep Corporate Green as a party, the plaintiff immediately named another nondiverse defendant based on an unsupported officer/employee liability claim to prevent a second removal. Plaintiff's unexplained actions and delay establish that the actual motive was not to assert viable claims against potentially liable defendants, but rather to keep a Louisiana citizen as a defendant and thereby keep the case in state court.

Outside the fraudulent joinder context, other cases applying the *Tedford* exception also require some sort of misconduct by the plaintiffs to manipulate jurisdiction.[10] For example, in *Rauch v. Rauch*, 446 F. Supp. 2d 432 (D.S.C. 2006), the case was removed two years and five months after it was filed when the plaintiff voluntarily dismissed the non-diverse defendant. The court wrote:

Defendants have clearly shown that this is a case warranting an exception. In this case, Defendants removed to federal court claiming fraudulent joinder twice within the one-year limit, and both times the federal court remanded, holding that there was some possibility that the non-diverse party could be liable in the action. Now, more than one year after the commencement of the action, Plaintiff dismissed the non-diverse party and Defendants finally have the evidence that proves Plaintiff intended to make this dismissal all along.[11] The actions of Plaintiff constitute a

---

[10] This Court has not undertaken to conduct an exhaustive survey of all such decisions.

[11] Elsewhere in the opinion, the court wrote:

This new proof is a tape recording made by Davis of a conversation between

shameless and egregious manipulation of this court's jurisdiction. Further, the legislative history of the statute reveals that the specific purpose of the statute is to disallow removal after significant action in state court. . . . Defendants have shown that, due to Plaintiff's failure to pursue discovery, substantial progress in this case has not been made in state court. . . . Accordingly, the central purpose of the one-year limitation would not be violated by recognizing an equitable exception in this instance. If ever an equitable exception should be recognized to relieve the inequities caused by a strict interpretation of the one-year limit on removal, it is in this very case.

*Rauch*, 446 F. Supp. 2d at 435–36.

In *Brooks v. Am. Bankers Ins. Co. of Fla.*, No. CIV.A. 401CV00008-PB, 2003

WL 22037730, at *1 (N.D. Miss. Aug. 20, 2003) (Pepper, J.), the court wrote:

For almost three years, the plaintiffs failed to propound discovery upon Ms. Jones [(the non-diverse defendant)]. The Court is also suspicious as to why Plaintiffs never sought a default judgment against Ms. Jones after they realized that she never filed an answer to their complaint or amended complaint. Plaintiffs' lack of intent to pursue claims against Ms. Jones in good faith is further evinced by their July 9, 2003 voluntary dismissal of the Millers-the only plaintiffs who ever had possible claims against Ms. Jones.

*Brooks*, 2003 WL 22037730, at *1. Similarly, in *In re Rezulin Prod. Liab. Litig. (MDL*

*No. 1348)*, No. 00 CIV. 2843 (LAK), 2003 WL 21355201, at *2 (S.D.N.Y. June 4,

2003) (Kaplan, J.), the court wrote:

---

Plaintiff, their children, and herself. In this taped conversation, recorded some time before the dismissal of Davis, Plaintiff states that even though he had sued Davis, he would did not intend to actually seek recovery against her.

*Rauch*, 446 F. Supp. 2d at 436 n. 1.

the Court is inclined to the view that an equitable exception to the one-year time limit. . . is warranted where, as here, the circumstances suggest that the plaintiff acted tactically to avoid removal and the interests of justice favor removal.

Specifically, the Court finds that the timing of plaintiffs' non-suiting of Dr. Rugama [(the non-diverse defendant)], five days following the one year anniversary of the action's commencement, suggests strategic behavior was at play, notwithstanding plaintiffs' contention that they non-suited the physician to avoid application of a six-month stay that would result because of the impaired status of Dr. Rugama's insurer. After all, prior to learning of the insured's impaired status, plaintiffs took no discovery from the physician. . . . Furthermore, plaintiffs' counsel has named non-diverse physician defendants in other Rezulin cases.

*In re Rezulin Prod. Liab. Litig.*, 2003 WL 21355201, at *2; *see also*, *Arrighi,* 2010 WL 4386066, at *6–7.

Finally, some courts found the exception applicable where the plaintiff purposely concealed the true amount-in-controversy to prevent removal. *Jones v. Chavez*, No. CIV.A. 11-2039, 2012 WL 441251, at *1 (E.D. La. Feb. 10, 2012) ("Despite receiving MRI results showing that the jurisdictional threshold had been met, Plaintiff did not provide the Defendants with this information until seven months after the test was taken, which was approximately a month after the one-year bar on removal had passed.").

The Court has found no solid footing in cases decided since the enactment of the statute. Some cases, including the lone case cited by the Defendants, have held that

fraudulent joinder alone can meet the "bad faith" standard. *See*, *Bank of Am., N.A. v. Lebreton*, No. CIV 14-0319 JB/KBM, 2015 WL 2226266, at *23 (D.N.M. Apr. 20, 2015) (Browning, J.) (holding that "the addition of the bad-faith exception to the one-year limitation clarifies that the one-year limitation is procedural, rather than jurisdictional, and, thus, extends the applicability of fraudulent-joinder doctrine past the one-year mark."); *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1256 (D.N.M. 2014) (Browning, J.) (same). Others require something more akin to bad <u>conduct</u> by the plaintiff. *See*, *In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*, No. 12-MD-2342, 2014 WL 2445799, at *3 (E.D. Pa. May 29, 2014) (Rufe, J.) (finding in dicta that defendant's argument that plaintiff lacked a valid claim against defendant was insufficient alone to establish bad faith).

Based on Congress's use of the phrase "bad faith," and the history of the exception prior to its enactment as part of section 1446, and in particular the application of the exception when "manipulation" had occurred, the Court concludes that statutory bad faith requires some sort of <u>intentional misconduct</u> by the plaintiff, not just fraudulent joinder. All of the common law equitable tolling cases cited above have that in common.[12] *See also*, *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d

---

[12] While it is <u>possible</u> that there is an equal or greater number of cases saying the opposite, the Defendants, whose burden it is to establish jurisdiction, has not produced them.

204, 211 (3d Cir. 2014) (noting that "[c]ases involving equitable tolling of the one-year time limit often focus on intentional misconduct by the plaintiff"); *Barnett v. Sylacauga Autoplex*, 973 F.Supp. 1358, 1367 (N.D.Ala. 1997) (Propst, J.) ("[T]he plaintiff's claims are in bad faith if, by [his] actions, [he] attempted to disguise the existence of the removability of the case until the one-year limitation had run."). The Defendants have made no showing of bad faith.

The Court notes that the purpose behind the one-year limitation is to prevent the disruptive removal of cases after substantial progress in the state court had been made. However, if fraudulent joinder alone made a case removable at any time, even <u>after</u> one year from the date the case was filed, the purpose of the limitation would be defeated. A calculating defendant could, itself, "manipulate" jurisdiction by waiting to see how the case progressed in state court before ultimately removing it based on fraudulent joinder. Indeed, in the instant case, discovery has already been completed in the state court, and summary judgment motions have been filed, and, at least as to Barista, ruled upon.

In their briefs, the Defendants argued that they could not have known that the Plaintiff had no claim against Barista until discovery had occurred and the above

deposition testimony had been taken.[13] However, that alone does not demand the conclusion that the one-year period should be extended. Indeed, that is a regular occurrence in litigation.

At oral argument the Defendants differed form their briefs and argued that it was clear <u>from the date the Complaint was filed</u> that there was no claim against Barista due to the Alabama statute of frauds.[14] If that is so, then the case should have been removed within 30 days after service of the Complaint upon these Defendants. 28 U.S.C. § 1446(b)(1). It is unclear exactly when the removing Defendants were served, but it was certainly before June 27, 2016, the day they filed their answer. Giving them the benefit of the doubt, under this argument the latest that they could have removed based upon fraudulent joinder would have been July 27, 2016. This case was not removed until December 13, 2017. (Doc. 1).[15]

---

[13] The Court agrees that the existence of Barista's Counterclaim would have prevented removal at the time of the deposition. *See Bristol-Myers Squibb Co. v. Safety Nat. Cas. Corp.*, 43 F. Supp. 2d 734, 744 (E.D. Tex. 1999) (Heartfield, J.).

[14] They make no argument that discovery was necessary to determine this. Indeed, they could not, as the contract which they cite as the basis for this defense is a contract <u>to which they were parties</u>.

[15] The Defendants argue in their briefs that they could not have removed after the McAdams deposition because of Barista's Counterclaim. However, Barista did not file its Counterclaim until August 8, 2016. Therefore, there was no impediment to removal prior to the deadline for doing so, if, on the face of the Complaint, the case was removable initially.

## IV.    CONCLUSION

Based on the foregoing, the Court finds that the Defendants have not shown bad faith, and their notice of removal was therefore untimely. This matter will be **REMANDED**.

**DONE** this 21st day of February, 2018.

**VIRGINIA EMERSON HOPKINS**
United States District Judge